COBB, Judge.
The appellant, Michael Lemaster, was convicted of one count of robbery in the first degree. He was sentenced to 30 years’ imprisonment. On tMs direct appeal he raises two issues. Because our resolution of the first issue raised requires a reversal of tMs case, we will address only that issue.
The appellant contends that the trial court erred in denying his motion for a judgment of acquittal. He claims that the State’s evidence was insufficient to support his robbery conviction. The basis of this claim is that the only evidence linkmg the appellant with the crime is the testimony of the accomplice. The appellant is correct.
Under Alabama law a criminal defendant cannot be convicted of a felony solely upon the testimony of an accomplice. See, § 12-21-222, Ala.Code 1975. In order to convict the accused, the State must offer evidence which corroborates the accomplice’s testimony. That evidence need not be strong enough on its own to support a conviction, but it must tend to connect the accused to the offense charged. See, Banks v. State, 647 So.2d 46 (Ala.Crim.App.), cert. denied, 647 So.2d 46 (Ala.1994) (summary of the law of corroboration of accomplice testimony).
Keeping in mind that the corroborative evidence need not be strong enough by itself to convict, and that it need not corroborate the material elements of the crime, we still find that there is simply no corroborative evidence available here. See, Banks at 49. In this case, the bulk of the State’s evidence consists of the testimony of James Robert Clark, one of the perpetrators of the robbery in question, who pleaded guilty as a result of his participation m tMs offense. His testimony alone links the appellant with the robbery.
Mr. Clark testified that he, along with the appellant, the appellant’s wife (VicM Lemas-ter), Diane White, and Danny King, concocted a plot to rob Robert McCollum because they needed money. Mr. McCollum was a regular customer at the Omelette Shop restaurant where Ms. Lemaster and Ms. White worked. He often carried a large amount of cash. On the evemng of the robbery, Ms. White telephoned Mr. McCollum and asked him to take her to dmner. Ms. Lemaster accompamed them. When Mr. McCollum returned the two women to Ms. White’s house at approximately 11:30 p.m., all the lights in the house were off. The two women entered the house and McCollum followed. Mr. McCollum was struck from behind with a blunt object and robbed of his wallet. Although he was not present for the attack (his delayed arrival was part of the plan) Mr. Clark arrived immediately thereafter and saw the appellant holding a baseball bat, with which the victim had been struck. Mr. King and the appellant left Ms. White’s house. Mr. Clark telephoned the police emergency number after the two men left the premises. Several hours later they met at the Lemaster house, where they divided the proceeds of the robbery. Mr. McCollum never saw his attacker, and the police never recovered the bat.
The State also presented the testimony of Mr. Murrell Nixon, who lives near Ms. *1160 White. Mr. Nixon testified that sometime between 1:00 a.m. and 2:30 a.m. Mr. King (whom he knew) and another man knocked on his door. They were both wet from the waist down, although it was not raining. (R. 137.) A stream separates the White and Nixon properties. (R. 161-62.) The men asked to stay and warm themselves, and they remained there for around 10 minutes. Mr. Nixon drove the two men to a house at the intersection of Brasher’s Chapel Road and Lane Switch Road and dropped them off. (R. 136.) The drive took approximately five minutes. (R. 138.) Mr. Nixon’s description of the man who appeared with Mr. King at his door on that night roughly matched the appellant. (R. 134.) However, when the prosecutor pointed to the appellant and asked Mr. Nixon to identify him as the man who was with Mr. King that night, Mr. Nixon stated. “I don’t think that’s him.” (R. 134.) In his own defense, the appellant presented alibi testimony.
The State, in its brief on appeal, argues that Mr. Nixon’s testimony places the appellant near the scene of the robbery later on the night of the robbery. (Appellee’s brief, at 17.) However, the State misrepresents the evidence adduced at trial; that crucial piece of evidence is glaringly absent. Mr. Nixon did not identify the appellant as the man who appeared at his door with Mr. King. The State’s ease lacks corroboration of the accomplice Clark’s testimony implicating the appellant. No fingerprints or other physical evidence were found linking the appellant to the robbery. No testimony was presented that would sufficiently link the man who visited Nixon with the appellant. Only Clark’s testimony provides the link, and that testimony is legally insufficient to convict.
Based upon the evidence summarized above, this court holds that the State did not present sufficient corroborative evidence to support the accomplice’s testimony. With the obvious exception of the accomplice’s testimony, no evidence, either direct or circumstantial, exists to sufficiently link the man at the Nixon house with the robbery, nor to link the man at Nixon’s house with the appellant, nor to link the appellant with the robbery. The State’s only nonaccompliee eyewitness was unable to positively identify the appellant as the man who appeared at his door after the robbery of Mr. McCollum. During the hearing on the appellant’s motion for a judgment of acquittal even the trial court expressed its concern about the weakness of the State’s corroboration evidence. (R. 174-80.) The appellant’s motion for a judgment of acquittal should have been granted.
For the foregoing reasons, the judgment of the trial court is reversed and a judgment rendered for the appellant.
REVERSED AND JUDGMENT RENDERED.
All the Judges concur.